Watkins' Ex'rs v. Snadon, &c.

Case 90—PETITION EQUITY—November 22.

# Watkins' Ex'rs v. Snadon, &c.

### APPEAL FROM TODD CIRCUIT COURT.

As a general rule, where there is a bequest of money or stocks or bonds to one person for life, remainder to another, the life-tenant is not entitled to the possession, but the executor retains it, the life-tenant getting the income. But if it appears from the entire will that the testator intended the life-tenant to have the possession, then this intention must control, as rules of construction are to be resorted to only when the testator has not made known his purpose.

A testator, after devising certain real estate and bonds to his daughters for life, remainder to their children, devised the residue of his estate to his grandchildren for life, remainder to their children, with the provision that the share of any grandchild dying without issue should go to the survivors. The testator further authorized "the parties," if they thought best, to invest the notes and bonds in good real estate, and provided that his executors should make no charge for distributing the legacies made to his daughters and grandchildren "because of the little labor attending it," and added: "I hope to make the distribution myself." *Held*—That the entire will shows that it was the testator's intention that the life-tenants should have the possession of the property devised to them for life.

WM. LINDSAY for appellants.

Where a general devise of bonds or money is made to one for life with remainder over, it is the duty of the executor to retain possession and pay to the life-tenant the income, unless from the whole will it appears that it was the intention of the testator that the life-tenant should have possession of the thing devised; and in this case no such intention appears. (Hill v. Harding, 13 Ky. Law Rep., 385; Field v. Hitchcock, 17 Pick., 182; Freeman v. Knight, 2 Ired. Eq., 72; Brannock v. Stokes, 76 Ind., 558; Rich v. Morris, 78 N. C., 377; Evans v. Iglebott, 6 Gill & J., 171; Clarke v. Clarke, 8 Paige, 152; Saunderson v. Stearne, 6 Mass., 37; Covenhaven v. Schuler, 2 Paige, 122; Wood v. Sullivan, 1 Swan, 507; 2 Williams on Executors, 1396.)

PETRIE & FORGY, of counsel on same side.

1. The court erred in even attempting to construe the will as to land lying in another State.

2. The executors are trustees for both the life-tenants and the remain-
dermen and, therefore, the life-tenants are not entitled to the
possession of the notes, bonds and cash on hand. (Perry on
Trusts, secs. 539, 543; Hill on Trustees, p. 385; 8 Dana, 33; 6 B.
M., 35; 10 B. M., 290; Williams on Executors, p. 1717; 5 Dana,
411; 3 Dana, 292; 1 Maddock's Chan. Rep., 577; 11 Maddock's
Chan. Rep., 126.)

3. If the testator does not make the executors in so many words
trustees in this case, yet the law is that where money, stocks and
bonds are given to one for life with remainder over, the life-tenant
is not entitled to the possession of the same unless the testator so
expresses himself, or it can be gathered from the whole will that
he intended they should have possession. (21 N. W. Rep., 951;
Hooper v. Bradbury, 133 Mass., 303; 17 Pick., 182; 30 Wis., 351.)

   And even conceding that this rule does not apply to the specific
devises under this will, it does apply to the residuary devises.
(Hill v. Harding, 13 Ky. Law Rep., 380.)

   The court will not single out any particular expression and con-
strue the whole will from it alone, but will consider the whole will
and from the whole give an opinion, although it may be appar-
ently contradictory to some particular clause. (Roach v. Dabney,
11 Ky. Law Rep., 123; Hill v. Harding, 13 Ky. Law Rep., 380.)

4. The court erred in directing the executors to pay over to the life-
tenants the whole of this property, less $75,000 to be retained to
pay debts and expenses. This was not a suit to settle the estate,
but was simply a prayer to construe the will.

BOWDEN & BOWDEN, W. F. BROWDER, BEN T. PERKINS,
Jr., HENRY J. STITES, for appellees.

1. Whether the bequest be general or specific, the intent of the testa-
tor must determine whether the life-tenant is entitled to receive
and manage the legacy given him for life, without giving security.
The only difference between general and specific bequests is as
to the manner in which the intent is manifested. When the
legacy is specific the intent is a necessary presumption from the
nature of the legacy. When it is general the intent is manifested
by particular expressions, or by the whole scheme of the will.
(Hill v. Harding, 13 Ky. Law Rep., 380; Hubbard v. Young, 10
Beav., 203; Rowe v. Rowe, 29 Beav., 276; Alcock v. Sloper, 2
Myl. & K., 699; Pickering v. Pickering, 4 Myl. & C., 289; Simp-
son v. Lester, 4 Jur. (N. S.), 1269; Woods v. Sullivan, 1 Swan,
507; Henderson v. Vaulx, 10 Yerg., 35; Hill v. Hill, 2 Lans., 43;
Healey v. Toppan, 86 Am. Dec., 160; 57 Am. Dec., 586; 2 Lead
Cas. Eq., 284 (Howe v. Dartmouth); Pomeroy's Eq. Jur., 1168;
2 Red. Wills, 476.)

2. Executors are bound by a provision of the will disallowing com-

Watkins' Ex'rs v. Snadon, &c.

pensation for their services, either in whole or in part.   (Bate v.
Bate, 11 Bush, 643; Brown v. Brown, 6 Bush, 652; In re Ker-
nochan, 7 Cent. Rep., 90.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

William Watkins died testate in May, 1890, his will
having been executed in October, 1883.

He left no widow, but two children and six grand-
children, the latter being the children of his two daugh-
ters that survived him.   He left a large estate, consisting
of various kinds of property.   A son-in-law, a grandson,
and one of the daughters were nominated by the will as
his personal representatives, and they are the appellants.
They brought this action for its construction.   It gives
to his two daughters for their separate use for life certain
real estate and county bonds, with remainder to their
children; and the power is given the daughters, or in the
event of their death the grandchildren, to dispose of the
property if sufficient cause arises, the proceeds to be
re-invested by them in real estate.

After making one other specific bequest he gave the
entire remainder of his estate for life to the six grand-
children, share and share alike, for their separate use,
with remainder to their children respectively.

It is evident the paramount purpose of the testator
was to provide for his two daughters and his grandchil-
dren.   The will expressly so states.

It further provides, if any one of the grandchildren
should die without issue, his or her portion shall go to
the survivors; also, as money may be collected on notes
or bonds, for its re-investment in certain ways, and gives
the power, if it becomes necessary, to sell any of the real

estate and invest the proceeds in like property, but does not expressly say by whom this is to be done.

It expressly declares that the profits arising from the estate given to his daughters for life shall be subject to their absolute disposal and control; and that this shall be the case as to the grandchildren as to the estate given them for life, after paying the expenses of their education, and when they become of age.  Three of the grandchildren are married women, and three are infants. Mention is not made in the will of any one as trustee. In the portion of it relative to the devise to the grandchildren, and just after speaking of them, it says : " Such is the difficulty of loaning money safely, that I hereby authorize *the parties,* if they, in their wisdom, think it would be best and safest, to invest the notes above named and also the bonds as above in good real estate. "

It also provides : " I request and require that my hereinafter named executor or executors and executrix make no charge for distributing the legacies herein made to my daughters and grandchildren, because of the little labor attending it; I hope to make the distribution myself. "

The principal contention, and the only one we think it necessary to consider, is, are the grandchildren not only entitled to the profits of the estate given them for life, but also to the possession and control of it, those not of age being represented by guardian ?  The lower court held they were, and denied the right of the executors to hold and control it during the lives of the life-tenants. In this view we concur.

It is urged, however, that the estate devised to them for life is a large one; that it is largely composed of

money and notes; that by giving the control of one-sixth· of it to each of the life-tenants, it will likely be lost to the remaindermen, and that the testator can not be supposed to have intended such a risk; that the conduct of the estate in this way will place the rights of the remaindermen in continual peril, and that such management, with safety to the rights of all the interested parties, is impracticable.

It is true that generally, where there is a bequest of money, or stocks or bonds, the life-tenant is not entitled to the possession. The executor retains it, the life-tenant getting the income. But this and all other rules of construction must be disregarded if the testator's intention plainly appears from the entire will. If it shows that he intended the life-tenant to have the possession, that he was willing to trust him with it, then this intention must of course control. It determines the rights of the parties, and rules of construction are to be resorted to only when the testator has not made known his purpose. It is to be gathered from the entire will. The language employed in a single sentence is not to control as against an evident purpose shown by the whole instrument. Effect is to be given to the general intent, and this we· think is shown throughout the will.

In the first place it is clear he intended the daughters to have the control and possession of the property given to them for life, and a portion of it consisted of bonds. It is true it was a specific bequest, but yet it shows he was willing to risk the life-tenants. The support of his daughters and his grandchildren was his chief concern. His great grandchildren were not. And it is evident he expected and intended a speedy distribution of his estate.

This would be impossible if the executors are to hold it for the remaindermen. A half a century would likely elapse before the duty would end, and this would certainly be in the face of the fact that the testator declared, "I hope to make the distribution myself."

The will in the first place gives the property to the grandchildren for life. It seems to speak of them as "the parties" who are to make investments of the proceeds of the notes and bonds in real estate. It can not be doubted that if the personal representatives are to hold the property during the lives of the grandchildren, and as one may die deliver his or her portion to his or her children, that the care and control of the estate would involve much care, responsibility and labor; and yet the testator has declared that they shall "make no charge for distributing the legacies herein made to my daughters and grandchildren because of the little labor attending it."

It seems to us that it is plain, when the entire will is considered, that he was willing and intended to risk the life-takers with the possession of the property. If it be said that this is improbable, because their interest is antagonistic to that of the remaindermen, yet the interest of the former was his chief concern, and he doubtless knew that in case of bad faith upon their part, or that of the guardians of the infant devisees, in the control and conduct of the property, the courts would, upon proper application, interfere for the protection of the remaindermen.

He was willing to make the life-tenants, for whose benefit the devise was mainly intended, in effect trustees for the remaindermen without the giving of security.

He undoubtedly would not have required it, if he had, as he hoped to do, made the distribution himself.

Judgment affirmed.